Mary **CORY**

v.

**SMITHKLINE BECKMAN CORPORATION.**

Civ. A. No. 83–0876.

United States District Court, E.D. Pennsylvania.

March 28, 1984.

Alan Epstein, Philadelphia, Pa., for plaintiff.

Robert M. Landis, Alan Berkowitz, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

Following her discharge by defendant SmithKline Beckman Corporation, plaintiff Mary Cory filed a complaint with the Equal Employment Opportunity Commission. She subsequently instituted this action. Her amended complaint alleges violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (ADEA), the Pennsylvania Human Rights Act, 43 P.S. §§ 951 *et seq.* (PHRA), breach of an oral employment contract and an implied covenant to deal fairly and in good faith, and intentional infliction of emotional distress. The case is now before the Court on defendant's motion for summary judgment on all counts. For reasons discussed below the motion is denied.

F.R.C.P. 56 provides that summary judgment may be granted when there is "no genuine issue of material fact and the mov-

ing party is entitled to judgment as a matter of law." Plaintiff has submitted extensive exhibits to substantiate her position that summary judgment is not appropriate.

Mary Cory began to work at SmithKline Beckman in January 1957. She continued that employment, with the exception of a two-year stay in a convent, until she was fired in March, 1982. Until November, 1981, by which time the events she complains of were underway, Cory received ratings of good to excellent at her performance reviews. She was only a few credits away from a college degree.

In November, 1978, she began to apply for a promotion through defendant's job posting system. She was unsuccessful, and those chosen for the posted jobs were younger than she. They were also under 40 years of age. On January 20, 1979, Mary Cory turned 40. Except for a period of illness in 1979, she continued to apply for promotions. In March of 1980 she accepted a lateral transfer within her department.

Cory first lodged a complaint with the EEOC in June, 1980. Shortly after receiving a second lateral transfer, this time to a new department, she withdrew the complaint.

Her relationship with her new supervisor deteriorated, and she once again applied for a transfer. In November of 1981 she received her first unfavorable performance rating. On January 11, 1982 she was formally warned that she had three months to improve her performance and that she could be discharged at any point during those three months. She was fired on March 1, 1982, and filed the instant action approximately three months thereafter.

## I. *Age Discrimination Charges—Counts 1 and 4*

SmithKline vigorously asserts that Cory is attempting to pursue her June 1980 charge which she withdrew in January of 1981. It asserts that she received the de-

sired transfer and that her withdrawn complaint is a nullity. In addition, SmithKline argues plaintiff may not rely on any discriminatory acts occurring more than three hundred days prior to the charge filed on June 8, 1982, which is at issue here.

 Fairly construed, Cory's complaint asserts in part that her difficulties and ultimate discharge were the result of her having filed the 1980 charge with the EEOC. Retaliation by an employer against an employee for engaging in the protected activity of filing an EEOC complaint is forbidden by ADEA. 29 U.S.C. § 623(d). This portion of Cory's complaint was clearly timely filed.

More difficult is whether this is the sort of case in which the continuing violation theory can be used, but I need not resolve that issue at this time. Many of plaintiff's job bids were clearly denied prior to the 300-day period; however, plaintiff clearly has made allegations which, if believed, would establish ADEA violations within the limitations period. In addition to the allegation that she was discharged in retaliation for filing an EEOC complaint plaintiff has alleged at least two refusals to promote her within the limitations period.

Even if refusals to promote occurring prior to the 300-day period cannot form the basis for plaintiff's claim such events could be admissible as background evidence if plaintiff first establishes a violation within the 300-day period.[1] *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 760 (9th Cir. 1980); *Wajda v. Penn Mutual Life Insurance*, 528 F.Supp. 548, 563 (E.D.Pa.1981). Thus plaintiff's 1979, 1980, and early 1981 job bids may be considered as background evidence in ruling on defendant's motion for summary judgment.

ADEA claims are governed by the shifting evidentiary burdens and presumptions that are applied to Title VII claims. *Rodriguez v. Taylor*, 569 F.2d 1231, 1239 (3d Cir.1977). Thus, plaintiff must first present a prima facie case of discrimina-

---

1. Certain of the alleged occurrences took place prior to plaintiff becoming forty years of age.

These incidents, of course, may not be used by plaintiff at all.

tion. The burden of production then shifts to the defendant to adduce evidence of non-discriminatory motivation. Absent such rebuttal evidence the Court will presume unlawful discriminatory purpose; however, should the defendant carry this burden the plaintiff must then prove by a preponderance of the evidence that the legitimate reason offered by the defendant was merely a pretext for discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

In this case defendant's motion for summary judgment makes no effort to provide evidence of a non-discriminatory purpose underlying its employment decisions. Instead it relies solely on plaintiff's alleged failure to make out a *prima facie* case of discrimination. Thus I need only determine whether plaintiff has carried her initial burden. *Meyer v. California & Hawaiian Sugar Co.,* 662 F.2d 637, 639 (9th Cir.1981). While the evidence is far from compelling I must conclude a triable issue of fact exists.

■ To make out a *prima facie* case of age discrimination plaintiff must establish that (1) she was within the protected age group, (2) she was rejected for a promotion to an available job for which she was qualified, and (3) that the position was ultimately filled by someone younger than plaintiff. *Smithers v. Bailar,* 629 F.2d 892, 895 (3d Cir.1980). In this lawsuit a *prima facie* case could also be made out by coming forward with evidence that plaintiff was retaliated against for filing a charge with the EEOC.

■ Plaintiff has carried her burden. She has presented evidence that at least twice within the statutory period, and after she turned 40 years of age, she applied for a promotion to a position for which she was qualified. In each case she was rejected. Defendant makes much of the fact that plaintiff's only evidence that those ultimately hired for these positions were under the age of 40 is her own testimony; however—

ever, this is a matter conceivably within her realm of knowledge and is therefore one as to which she could testify.[2] In addition, defendant does not present contrary evidence.

Furthermore, plaintiff received high performance ratings from 1957 through late 1981. Her first unsatisfactory report was received in November of 1981, and rated her as "less than satisfactory" in all categories. Two months later, on January 11, 1982, she was put on three-months' probation. Rather than a period by the end of which she was to have shown improvement, she could be fired at any point during the three months. On February 23, her supervisor sought permission to fire her, and she was discharged on March 1. This precipitous decline and abrupt termination upon withdrawal of her original EEOC charge, when coupled with the number of meetings she was required to attend during the period in which her given task was to improve her performance, provide a sufficient basis from which to infer that she was discriminated against. Hence, summary judgment is inappropriate on counts one and four.

## II. Contract Claims—Count 5 and 6.

■ Ms. Cory alleges a breach of an oral employment contract in count 5 and a breach of an implied covenant of good faith in count 6. While it is true that a contract with no specific term is normally terminable at will, the plaintiff may overcome this presumption by showing "the intent of the parties that the contract last for some definite period of time or for a reasonable time, or by showing that the plaintiff-employee gave the defendant-employer consideration in addition to the employee's normal services, such as sacrificing other employment opportunities." *McNulty v. Borden, Inc.,* 474 F.Supp. 1111, 1119 (E.D.Pa.1979).

■ In *Wagner v. Sperry Univac,* 458 F.Supp. 505, 521 (E.D.Pa.1978), summary judgment on a contract claim was denied in a factual setting similar to that of Cory's. In that case plaintiff stated at his deposi-

---

**2.** The plaintiff's credibility, which is potentially at issue given her inconsistent statements on this point, is not a matter that can be resolved on summary judgment.

tion that he remained at his job in reliance on his employer's assurance of fair treatment. This was held to create an issue of material fact as to whether an otherwise terminable-at-will employment contract had been altered by agreement of the parties. Cory's deposition provides evidence of reliance on defendant's personnel policies which, although slight, is even stronger than was Wagner's. She testified that in reliance on her job security she failed to renew the eligibility rating required for federal and city jobs. Thus summary judgment would be inappropriate on the contract claims.

### III. *Intentional Infliction of Emotional Distress—Count 7.*

 Pennsylvania courts have generally accorded the tort of intentional infliction of emotional distress a narrow scope. To establish a cause of action plaintiff must show behavior that is outrageous and either reckless or intentional and that results in severe emotional distress or bodily harm. *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1273 (3d Cir.1979). To be actionable, behavior must be "beyond mere insults, indignities, and petty oppression." *Rogers v. Loews L'Enfant Plaza Hotel,* 526 F.Supp. 523 (D.D.C.1981).

A recent case from this district held that a complaint which alleged a continuing course of behavior that resulted in an oppressive work atmosphere and ultimate retaliation sufficiently stated a cause of action for intentional infliction of emotional distress even though the complained of behavior consisted of verbal sexual advances. *Shaffer v. National Car Corporation,* 565 F.Supp. 909 (E.D.Pa.1983). Similarly, *Vegh v. General Electric Company,* No. 83–744 (E.D.Pa. May 18, 1983), denied a motion to dismiss a complaint charging intentional infliction of emotional distress based on repeated undesired sexual advances. These decisions arguably broaden the Pennsylvania approach in that acts which are not outrageous when viewed as isolated incidents become outrageous when continuously repeated.

In light of these decisions I will not grant summary judgment on Count 7. Defendant does not deny that Cory was repeatedly denied promotions, was required to devote considerable time and energy to defending her performance, and ultimately lost her job. This series of events could form the basis for a jury verdict on a theory of intentional infliction of emotional distress.