**WILCOX DEVELOPMENT COMPANY,** Mid-Willamette Village Ore., Ltd., Glenn L. Wilcox and Lorraine Wilcox, individually, and on behalf of all others similarly situated, Plaintiffs,

v.

**FIRST INTERSTATE BANK OF OREGON, N.A.; and First Interstate Bancorp, Defendants.**

**A.C. DISTRIBUTING CO., INC.,** Arthur J. Cherry, Sr., and Arthur J. Cherry, Jr., individually, and on behalf of all others similarly situated, Plaintiffs,

v.

**PACIFIC WESTERN BANK and Pacwest Bancorp, Defendants.**

**James K. KUNKLE,** an individual residing in the State of Nevada, Plaintiff,

v.

**FIRST INTERSTATE BANK OF OREGON, N.A.,** a national banking association, and First Interstate Bancorp, a Delaware corporation, Defendants.

**Civ. Nos. 81–1127–RE, 81–1128–RE and 82–754–RE.**

United States District Court, D. Oregon.

April 19, 1984.

---

**17.** For an enumeration of Ryan's damages, see findings of fact no. 37–39 *supra.*

Henry A. Carey, Henry A. Carey, P.C., John D. Ryan, John D. Ryan, P.C., Leslie M. Roberts, Kell, Alterman & Runstein, Portland, Or., for plaintiffs.

Wayne Hilliard, Spears, Lubersky, Campbell & Bledsoe, Portland, Or., Roland F. Banks, Jr., Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for defendants.

## OPINION

REDDEN, District Judge:

These cases are presently before me on defendants' motions for summary judgment. Due to the similarity of the claims and arguments, I address the various motions in one Opinion.

### I. *Background*

#### A. *Wilcox v. First Interstate Bank*

Plaintiffs, Glen and Lorraine Wilcox, Wilcox Development Company (Wilcox) and Mid-Willamette Village Ore., Ltd. (Mid-Willamette), bring this action for damages and injunctive relief based on alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and section 1 of the Sherman Act, 15 U.S.C. § 1. The defendants are First Interstate Bank of Oregon, N.A. (FIOR) and its holding company, First Interstate Bancorp.

Wilcox is an Oregon corporation in the business of real estate development. Mid-Willamette is a limited partnership formed for the purpose of developing a residential planned unit development in Wilsonville, Oregon. Wilcox is a general partner of Mid-Willamette. Pursuant to a loan commitment dated December 23, 1977, Wilcox and Mid-Willamette executed their promissory note dated March 3, 1978 in the amount of $2.5 million for development of Mid-Willamette Village. To secure payment of the note, Wilcox and Mid-Willamette executed a mortgage on the real property. To further secure payment of the note, Glen and Lorraine Wilcox executed their guaranty of the note on February 8, 1978.

Plaintiffs defaulted on the loan and FIOR commenced foreclosure proceedings in state court in February 1980. A Clackamas County Circuit Court Judge granted summary judgment in FIOR's favor on the mortgage foreclosure suit on June 26, 1980.[1] The mortgaged property was sold at a sheriff's sale on December 10, 1980 to FIOR who bid the amount of its debt and the costs of foreclosure. A deficiency in the amount of $55 remains outstanding.

Plaintiffs filed this action on December 4, 1981. The RICO claim alleges that FIOR calculated the interest on plaintiffs' loan at a rate based on FIOR's announced prime rate rather than its true prime rate. Plaintiffs contend that FIOR failed to disclose to plaintiffs that its announced prime rate was not in fact the most favorable interest rate offered by FIOR to its most credit-worthy commercial borrowers. Plaintiffs claim that during the years 1979 through 1982, FIOR made more than 2,500 sub-prime rate loans. The RICO claim alleges that FIOR's failure to disclose sub-

---

1. In the state foreclosure action, plaintiffs asserted affirmative defenses of commercial impossibility, forfeiture, breach of contract, unclean hands, and unconscionability. Defendants contend that plaintiffs' RICO and antitrust claims are barred by collateral estoppel because the issue of whether FIOR was entitled to charge the interest rate it did was necessarily litigated in the state foreclosure action. I have examined the documents provided by defendants in support of their collateral estoppel defense. I conclude that plaintiffs' RICO and antitrust claims are not barred by collateral estoppel. The state court did not necessarily decide the issues underlying plaintiffs' RICO and antitrust claims.

prime lending and its charging plaintiffs more than its true prime rate was part of a scheme to defraud plaintiffs. According to plaintiffs, FIOR's use of the United States Postal Service to mail its notices of inflated interest charges to plaintiffs constitutes a racketeering activity within the meaning of RICO. Plaintiffs seek damages in the amount of the difference between FIOR's announced prime rate and its true prime rate. Plaintiffs also seek the difference between the value of the property foreclosed by FIOR and the price. FIOR paid at the "distress sale" of the property.

Plaintiffs' antitrust claim alleges that FIOR conspired with Bank of America, United States National Bank of Oregon, and four First Interstate Bancorp subsidiaries to fix the prime rate at a common and non-competitive level. Plaintiffs seek damages in the amount of the difference between FIOR's announced prime rate and what the rate would have been had competition existed. Under both claims, plaintiffs seek treble damages and attorneys' fees.

### B. *Kunkle v. First Interstate Bank*

Plaintiff James K. Kunkle filed this action against FIOR and First Interstate Bancorp on June 14, 1982. On December 27, 1983, I granted First Interstate Bancorp's motion for summary judgment and dismissed this action as to it because venue was improper.[2] Plaintiff Kunkle's action is thus solely against FIOR. Kunkle seeks treble damages and attorneys' fees for violations of section 1 of the Sherman Act and RICO. His RICO and antitrust theories are identical to those presented in *Wilcox*.[3] In addition to the federal RICO and antitrust claims, plaintiff asserts the following

state claims: rescission for misrepresentation and fraud; promissory estoppel; rescission for uncertainty; rescission for unilateral mistake; damages for deceit; and damages pursuant to the Oregon RICO statute, O.R.S. 166.715, *et seq.*[4]

Plaintiff's federal and the bulk of his state claims arise out of his July 9, 1980 construction loan agreement with FIOR. Pursuant to this agreement, plaintiff executed a promissory note and leasehold mortgage in the amount of $2,500,000. The loan was to finance construction of an air cargo facility at the Portland International Airport (the Building D project). The note provided for interest "at the rate of ONE percent (1%) per annum above bank's prime interest for 90 day commercial loans to substantial borrowers, in effect from time to time." FIOR declared the loan in default in August 1981. FIOR has counterclaimed in this action to foreclose the leasehold mortgage.

### C. *A.C. Distributing v. First State Bank*

Plaintiffs A.C. Distributing Co., Inc., (A.C.), Arthur J. Cherry, Sr., and Arthur J. Cherry, Jr. bring this action for violations of RICO and breach of contract.[5] A.C. is an Oregon corporation which operated as a warehouse distributor to the automotive industry until July 1980. The Cherrys are officers, directors and shareholders of A.C. Defendants are First State Bank, now known as Pacific Western Bank (PWB), and its holding company, PacWest Bancorp (PWBancorp). Both defendants have their principal place of business in Milwaukie, Oregon.

For many years prior to 1979, A.C. borrowed funds from PWB for use in the

---

**2.** First Interstate Bancorp waived the defenses of improper venue and lack of personal jurisdiction in the *Wilcox* case by failing to assert these defenses in its first motion to dismiss. Fed.R. Civ.P. 12(h)(1).

**3.** Plaintiffs in fact filed joint memoranda in opposition to defendants' motions for summary judgment on these claims. I have also consolidated these claims for trial beginning April 30, 1984.

**4.** FIOR seeks summary judgment on all plaintiff's claims. This Opinion addresses only the RICO, antitrust and rescission claims. I will issue an Opinion on the remaining state law claims prior to trial on these issues.

**5.** In their amended complaint, plaintiffs also asserted an antitrust claim. They have since abandoned that claim.

conduct of its auto parts business. In February 1979, PWB agreed to expand A.C.'s line of credit. The loan agreement provided for "interest on the unpaid balance of the Loan Account during the immediately preceding month at the rate of Prime + 2% per annum." In June 1980, PWB demanded payment in full of this loan within thirty days. A.C. received permission from PWB to control the sale of its receivables and inventory to repay the loan. A.C. retained a professional auctioneer to conduct the sale. On August 30, 1980, A.C. discharged its indebtedness to PWB from the proceeds of this sale.

Plaintiffs filed this action on December 4, 1981. Plaintiffs' RICO theory is identical to that presented in *Wilcox*. Plaintiffs allege that PWB breached its contract with plaintiffs by computing and charging interest based on its announced prime rate rather than its true prime rate.

## II. *Discussion*

Defendants have moved for summary judgment in their favor in each case. Federal Rule of Civil Procedure 56(c) allows for the granting of summary judgment if the court finds: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. The moving party has the burden of establishing the absence of a genuine issue of material fact. *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). All reasonable doubts as to the existence of a genuine issue of material fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). In addition, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Where different ultimate inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Life Insurance Co. of North America*, 638 F.2d 136 (9th Cir.1981). With these precepts in mind, I now address the merits of the motions for summary judgment.

### A. *Antitrust Claim in Wilcox and Kunkle*

Defendants seek summary judgment on this claim on the grounds that plaintiffs were not injured in their business or property and FIOR did not conspire with any other bank to fix the prime rate.

■■■ Courts should proceed with caution in considering summary judgment in antitrust cases. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Zoslaw, supra*, 693 F.2d at 882.

[S]ummary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised

*Poller, supra*, 368 U.S. at 473, 82 S.Ct. at 491. The Ninth Circuit has articulated the test for granting summary judgment in antitrust conspiracy cases.

Once the allegations of conspiracy made in the complaint are rebutted by probative evidence supporting an alternative interpretation of a defendant's conduct, if the plaintiff then fails to come forward with specific factual support of its allegations of conspiracy, summary judgment for the defendants becomes proper.

*ALW, Inc. v. United Air Lines, Inc.*, 510 F.2d 52, 55 (9th Cir.1975).

■■■ In this case, plaintiffs concede that they have no direct evidence of a conspiracy between FIOR and the alleged co-conspirators. Plaintiffs assert that circumstantial evidence supports the inference of a "conscious parallelism" conspiracy theory. To prevail on this theory, plaintiffs must show (1) sufficiently similar conduct, (2) the parallel acts were against each conspirator's self interest, that is, the decision

was not based on a good faith business judgment, and (3) a plausible motive for the conspirators' conduct. *Zoslaw, supra,* 693 F.2d at 884–85.

■ Contrary to defendants' contentions, the evidence offered by plaintiffs supports a rational inference of a conscious parallelism conspiracy. Plaintiffs point to the almost absolute parallelism between FIOR's and the other bank's prime rates. Plaintiffs' Memorandum in Opposition (antitrust), Ex. I. In addition, plaintiffs' evidence would support a finding that FIOR's prime rate was not tied to its costs of funds, such that the parallelism could not be explained because each bank faced an identical reason to raise or lower its prime rate. *Cf. Weit v. Continental Ill. Nat'l Bank & Trust Co.,* 641 F.2d 457, 463 (7th Cir.1981), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982). Plaintiffs also document that, through wire services, FIOR knows the exact amount of the alleged conspirators' prime rate whenever that rate is changed. Plaintiffs' evidence also shows that FIOR attended meetings with conspirators at which interest rates were discussed. *Cf. Weit, supra,* 641 F.2d at 460, 464 (alleged conspirators took steps to insure no discussion of interest rates and only two instances where interest rates were discussed). Plaintiffs do not contend that any one piece of evidence alone supports a finding of conscious parallelism; rather, plaintiffs rely on the combination of factors outlined above.

Through their expert, Professor Paul M. Horvitz, plaintiffs offer a plausible motive for the conspirators' actions. Professor Horvitz's affidavit also presents an issue of fact as to whether FIOR had a good faith business reason for joining in the alleged conspiracy. Defendants' evidence to the contrary merely shows that there is a genuine issue of material fact regarding the existence of the alleged conspiracy. The existence or nonexistence of the conspiracy are both plausible inferences to be made from the facts of these cases. As noted earlier, where different ultimate inferences can be drawn, summary judgment is inappropriate.

I also conclude that summary judgment is inappropriate on the ground that plaintiffs have not suffered injury to their business or property. Plaintiffs have offered sufficient evidence of injury such that summary judgment is not warranted. At this juncture, defendants have failed to show that they are entitled to judgment as a matter of law.

### B. *RICO Claims in Wilcox, Kunkle, and A.C. Distributing*

Defendants seek summary judgment on the following grounds: (1) defendants did not engage in a pattern of racketeering activity because they lacked the specific intent to commit the predicate acts of mail fraud; (2) plaintiffs have improperly sued the affected enterprises and not the persons who conducted the affairs of the enterprises; (3) plaintiffs were not injured by reason of a violation of 18 U.S.C. § 1962; and (4) defendants did not conspire with anyone to violate 18 U.S.C. §§ 1962(a) or (c). Defendants in *Kunkle* and *A.C. Distributing* also allege that plaintiffs' RICO claims are barred by the statute of limitations. I find defendants' second and third arguments persuasive and thus grant defendants' motions for summary judgment on the RICO claims.

Section 1964(c) of RICO provides that [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). Plaintiffs in these cases have alleged that defendants violated 18 U.S.C. §§ 1962(a), (c) and (d). These sections prohibit

(a) ... any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a

principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in or the activities of which affect, interstate or foreign commerce....

(c) ... any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern or racketeering activity or collection of an unlawful debt.

(d) ... any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

18 U.S.C. §§ 1962(a), (c) and (d).

■ The statute is clear that the enterprise cannot be the RICO defendant; RICO prohibits the *person* from acquiring or conducting the affairs of an enterprise through a pattern of racketeering activity. *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir.1984); *Willamette Savings & Loan v. Blake & Neal Finance Co.,* 577 F.Supp. 1415, 1427 (D.Or.1984). In these cases, plaintiffs have improperly alleged that the defendants are also the affected enterprises. While plaintiffs profess surprise at the Court's holding in *Rae,* I conclude that the statute is clear: the person and the enterprise must be unique entities. Defendants are entitled to summary judgment on this ground.

■ Plaintiffs in *Kunkle* and *Wilcox* seek leave to amend their pretrial orders to assert alternative enterprise allegations. I deny the motion because plaintiffs' alternative enterprise theories do not solve the problem that plaintiffs have sued the enterprise and not the alleged racketeer. Furthermore, such an amendment would not cure the other, and more serious, defect in plaintiffs' RICO claims: their failure to allege and prove they suffered a racketeering enterprise injury.

■ The law of this District is that, in order to recover under RICO, a plaintiff must allege and prove that he or she suffered a racketeering enterprise injury. *Blake & Neal, supra,* 577 F.Supp. at 1427–30. On this issue, I adopt the reasoning expressed in Judge Panner's exhaustive and well-reasoned Opinion. *Id.*

Plaintiffs' "excess interest" damages arise solely from the alleged predicate acts of mail fraud. In enacting section 1964(c), Congress did not intend to grant a private civil cause of action to persons injured by the predicate acts listed in 18 U.S.C. § *1961.* Rather, Congress authorized treble damages for injury caused by a violation of section *1962,* which prohibits the investment in and control of an enterprise through a pattern of racketeering activity. Congress viewed this prohibition as a completely new offense, distinguished from the predicate offenses already outlawed under existing state and federal law. *See* Organized Crime Control: Hearings on S. 30 and Related Proposals before Subcomm. No. 5 of the House Comm. on the Judiciary, 91st Cong., 2d Sess. 662–63 (1970) (testimony by Assistant Attorney General Will Wilson) (section 1962(a) creates a new offense not already covered by existing law: organized crime's investment of funds derived from already illegal activities punishable by remedies unavailable under existing law).

■ Plaintiffs argue that the racketeering enterprise injury requirement presents merely a pleading exercise. This is incorrect. A proper reading of the statute shows that RICO requires not only pleading, but proving, injury *by reason of* a violation of section 1962 before plaintiffs can prevail. I grant defendants' motions for summary judgment and dismiss the RICO claims in *Wilcox, Kunkle* and *A.C. Distributing.*

C. *Breach of Contract Claim in A.C. Distributing*

Plaintiffs contend that PWB [6] breached the contract provision that interest would

---

**6.** PWBancorp seeks summary judgment on the

ground that it was not a party to the contract on

be calculated on the bank's "true" prime rate. Since this claim arises out of the same set of operative facts as plaintiffs' RICO claim, plaintiffs asserted that I had pendent jurisdiction over this state law claim. Defendants argue, however, that since I have dismissed the federal RICO claim, I no longer have the power to reach the merits of plaintiffs' breach of contract claim. They argue that I must dismiss this claim for lack of jurisdiction.[7]

■ Despite some ambiguity in the reported cases in the Ninth Circuit, I conclude that I have the power to decide plaintiffs' state law claim. *Compare Meyer v. California and Hawaiian Sugar Co.*, 662 F.2d 637, 640 (9th Cir.1981) ("the question is one of discretion, not one of power.") *with Hodge v. Mountain States Telephone & Telegraph Co.*, 555 F.2d 254, 261 (9th Cir.1977) ("When a district court dismisses all federal claims prior to trial, it should not retain jurisdiction over pendent state claims." remanding with directions to dismiss state law claim for want of jurisdiction). I retain jurisdiction over plaintiffs' breach of contract claim because both the court and the parties expended considerable time on the pendent claim before the RICO claim was dismissed. The court and, more particularly, the parties have expended over two years on discovery disputes which concern plaintiffs' contract claim. In addition, I have thoroughly familiarized myself with plaintiffs' contract claim in the context of the motions for class certification. *See Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 903 (9th Cir.1983); *Meyer, supra*, 662 F.2d at 640; *Arizona v. Cook Paint & Varnish Co.*, 541 F.2d 226, 227 (9th Cir. 1976). Having exercised my discretion to retain jurisdiction over plaintiffs' breach of

contract claim, I address PWB's motion for summary judgment.

■ I deny PWB's motion. PWB has failed to show the absence of genuine issues of material fact and that it is entitled to judgment as a matter of law. I do, however, grant PWB's motion to dismiss the Cherrys as party plaintiffs on this claim. The Cherrys are not parties to the contract at issue; the contract was between the corporation, A.C. Distributing, and PWB. The general rule is that shareholders cannot sue for injury suffered only by the corporation. *Gomez v. Alexian Bros. Hospital*, 698 F.2d 1019–1021 (9th Cir.1983); *Erlich v. Glasner*, 418 F.2d 226, 228 (9th Cir.1969). The Cherrys do not allege any breach of contract injury suffered by them as individuals as opposed to injury suffered by the corporation. It is the corporation that suffered the excess interest damages.

■ I do not, however, award PWB attorneys' fees against the Cherrys. The case cited by PWB in support of its claim for fees, *Golden West Insulation v. Stardust Investment Co.*, 47 Or.App. 493, 615 P.2d 1048 (1980), is readily distinguishable. In *Golden West*, the Court of Appeals adopted the reasoning that an award of attorneys' fees to a party defendant who succeeds in having the action dismissed as to him or her "can be predicated on the doctrine of equitable estoppel—e.g., the plaintiffs having alleged and attempted to prove the defendant wife was a party to the notes as a joint venturer and that she was liable under the notes' attorney fee provisions and having caused defendant wife to defend against such liability, were estopped to deny defendant wife was a

which this claim is based. In their memorandum in opposition to defendants' motion for summary judgment, plaintiffs state that the contract claim is against PWB only. Plaintiffs argue there "has been no litigation with Bancorp, as distinguished from PacWest, with respect to the contract claim against PacWest." Memorandum at 68. Nonetheless, PWBancorp contends that it views plaintiffs' first amended complaint and the pretrial order as asserting the breach of contract claim against PWBancorp also. I find

this reading of the pleadings incorrect; I agree with plaintiffs' interpretation of their pleadings. I, therefore, do not award PWBancorp attorneys' fees for its defense of this claim.

7. As noted earlier, plaintiffs and defendants are all citizens of Oregon. Thus, diversity jurisdiction over plaintiffs' state claim does not exist in this action.

party to the contract for the remedial purposes of [a statute making attorneys' fee clauses in contracts reciprocal]." *Id.*, 47 Or.App. at 511–12, 615 P.2d 1048 (*quoting Pas v. Hill*, 87 Cal.App.3d 521, 151 Cal. Rptr. 98 (1978)). In this case, equity dictates that PWB, having denied that the Cherrys were parties to the contract, should be estopped to assert the contractual provision for attorneys' fees against the Cherrys. In addition, PWB has not shown that it has incurred any greater attorneys' fees for defending this claim merely because the Cherrys were named plaintiffs. PWB's position is vastly different than a defendant who is forced to defend a breach of contract action that has erroneously been brought against him or her.

### D. Rescission for Unilateral Mistake Claim in Kunkle

Kunkle asserts that he is entitled to rescission for unilateral mistake as to the method by which his interest would be calculated. As in his RICO claim, Kunkle contends that he thought FIOR would calculate interest based on FIOR's lowest rate to its most credit-worthy commercial borrower. He contends that he did not know that FIOR's announced prime rate did not equal its lowest commercial rate for short term loans.

I deny FIOR's motion for summary judgment on this claim because it has failed to show the absence of genuine issues of material fact.

### III. Conclusion

I deny defendants' motions for summary judgment with respect to the antitrust claims in *Kunkle* and *Wilcox*. I grant defendants' motions with respect to the RICO claims in all three cases. I deny PWB's motion as to the breach of contract claim in *A.C. Distributing.* I also deny FIOR's motion for summary judgment on plaintiff's claim for rescission for unilateral mistake in *Kunkle.*