Dean VIRDEN, et al., Plaintiffs,

v.

GRAPHICS ONE, et al., Defendants.

No. 83–2420 RG(Bx).

United States District Court,
C.D. California.

Dec. 2, 1985.
On Reconsideration Jan. 3, 1986.

John E. Hill, David H. Schwartz, Raymond P. Hermann, Hill, Schwartz, Stenson & Boutin, A Law Corp., San Francisco, Cal., Harold Brown, Joseph Kropp, Kevin McLean Law Offices of Harold Brown, Boston, Mass., for plaintiffs.

Richard B. Cutler, Eric F. Edmunds, Jr., Robert A. Merring, Cutler & Cutler, A Professional Law Corp., Los Angeles, Cal., John J. Lynch, New York City, for defendants, Itek Corp. and Itek Leasing Corp.

## MEMORANDUM & ORDER (AMENDED)

GADBOIS, District Judge.

The parties' cross-motions for summary judgment were heard by this court on January 21, 1985. This court has read and considered all the pleadings, declarations, exhibits, documents on file, oral arguments, and the memoranda of points and authorities submitted by the parties in support of and in opposition to these cross motions for summary judgment. This

court holds that: (1) defendants Itek and ILC's motion for summary judgment is denied in its entirety; and (2) the plaintiffs' motion for partial summary judgment is granted in its entirety.

BACKGROUND:

The plaintiffs are the owners of nine so-called graphics centers ("graphics centers" or "franchises") that they bought from defendant Graphics One, Inc. ("G–1"), a California corporation that developed, licensed, and sold these centers as franchises. These graphics centers provide to the public "pre-press" services, such as typesetting, camera work, layout and design, which are used in the production of "camera-ready" copy for printing. The graphics centers owned by the plaintiffs do not provide the actual printing or reproduction services.

G–1 was allegedly created, financed, and controlled by Itek Corp. ("Itek") and, more particularly, by Itek Graphics Products ("IGP"), a division of Itek that makes equipment used at all stages of the printing process, comprising both the pre-press and actual printing stages. This equipment includes printing presses, plate makers, daylight cameras, and computer typesetters. Although IGP had been successful in the past in selling those products used at the actual printing stage to quick print franchises such as "Sir Speedy" and "Big Red Q," IGP apparently had failed to sell its pre-press equipment to these customers. In this action the plaintiffs charge that IGP established G–1 to market and sell its less popular pre-press equipment through the creation of franchises.

G–1's franchise agreements required each franchisee to acquire the pre-press equipment that was marketed as a package called the Itek " 'graphics center' franchise equipment package" (the "franchise equipment package" or the "package"). In order to make the package available to potential franchisees unable to pay the full purchase price, Itek in turn created Itek Leasing Corp. ("ILC"), a wholly owned subsidiary, to provide optional lease financing of the package to the franchisees. Most plaintiffs in this action chose this option and elected to lease the complete package through ILC. Darryl Chattayar, a former Itek employee who had earned an outstanding reputation at Itek as a salesman, was installed as president of G–1.

The plaintiffs allege that G–1 and Chattayar made oral misstatements and written misrepresentations in order to induce the plaintiffs and others to purchase franchises and the package of pre-press equipment. In particular, the plaintiffs allege that G–1 and Chattayar falsely represented that the franchises: (1) were a unique business concept that had no competition; (2) had a proven record of high growth and profitability; and (3) were a "turnkey graphic arts business" that could be run successfully with a minimum of training and no prior business experience in graphics arts.

Contrary to G–1 and Chattayar's optimistic statements concerning the financial prospects of the graphics centers, the plaintiffs allege that their franchises began losing money almost immediately after they opened for business. The plaintiffs claim that during this period G–1 and Chattayar fraudulently encouraged or intimidated each franchisee to incur additional debt and spend additional time and energy to keep his unprofitable franchise operating so that lease payments would continue to flow to ILC. Most of the plaintiffs' franchises nevertheless eventually failed financially and the plaintiffs evidently incurred substantial financial losses as a result of their investments in these franchises. In addition, both G–1 and Chattayar encountered financial difficulties and are now bankrupt.

The plaintiffs brought this action against Itek, ILC, G–1, and Chattayar alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1985), and on various state law grounds. This court has jurisdiction over this action because it involves a federal question, i.e., the interpretation of RICO. *See* 28 U.S.C. § 1331 (1985).

The matter is before the court on various cross-motions for summary judgment and partial summary judgment. Fed.R.Civ.P. 56. Defendants Itek and ILC move for summary judgment dismissing them from this action or, in the alternative for partial summary judgment on all the plaintiffs' RICO claims. Because these defendants have failed to put forth any argument in support of their position that they should be dismissed from this action beyond their arguments attacking the sufficiency of the plaintiffs' RICO claims, this court will treat defendant Itek and ILC's summary judgment motion as attacking only those claims. Defendants Itek and ILC suggest also that should this court dismiss, the plaintiffs' RICO claims, it also should dismiss the plaintiffs' pendent state claims pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The plaintiffs, on the other hand, have moved for partial summary judgment on certain elements of one particular RICO claim against defendants Itek and ILC.

It should be noted at this point that since the time that the parties made these cross-motions for summary judgment the United States Supreme Court has handed down its decisions in the companion cases of *Sedima, S.P.R.L. v. Imrex Co.*, — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), and *American National Bank and Trust Co. of Chicago v. Haroco*, — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (*per curiam*). These decisions, particularly *Sedima*, decided many of the issues raised by these cross-motions for summary judgment. These issues are discussed below.

*ANALYSIS:*

## I. A GENERAL OVERVIEW OF THE RICO STATUTE AND THE PLAINTIFFS' RICO CLAIMS.

The principal section of RICO, 18 U.S.C. § 1962 (1985),[1] prohibits the following activities:

(1) The use of income or proceeds from a pattern of racketeering activity by a principal in that activity to acquire an interest in or to establish an enterprise engaged in interstate commerce. § 1962(d).

(2) Acquisition of an interest in or control of an enterprise engaged in interstate commerce through a pattern of racketeering activity. § 1962(b).

(3) Participation in or operation of an enterprise engaged in interstate commerce through a pattern of racketeering activity. § 1962(c).

---

1. Section 1962 provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which effect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activites of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

(4) Conspiracy to commit any of the above activities. § 1962(d).

*See Harper v. New Japan Securities International, Inc.,* 545 F.Supp. 1002, 1004 (C.D.Cal.1982).

The important terms in section 1962 are defined in 18 U.S.C. section 1961, 18 U.S.C. § 1961 (1985). "Racketeering activity" is defined to include a wide range of both federal and state offenses. *See id.* Each act of racketeering commonly is referred to as a "predicate act." A "pattern of racketeering activity" requires at least two predicate acts occurring within ten years of each other, one of which must have occurred after RICO's effective date, October 15, 1970. *Id.* "Enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity...." *Id.*

18 U.S.C. section 1964(c), 18 U.S.C. § 1964(c) (1985), provides a private cause of action for violations of section 1962. Section 1964(c) states: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." *Id.*

As the *Sedima* Court noted, "RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach ... but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes' ...." *Sedima,* — U.S. at —, 105 S.Ct. at 3286. Although some courts have expressed distress at the "extraordinary, if not outrageous," uses to which the civil provisions of RICO have been put, *Sedima S.P.R.L. v. Imrex Co.,* 741 F.2d 482, 487 (2d Cir.1984), *rev'd,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), "this defect—if defect it is—is inherent in the statute as written, and its

correction must lie with Congress. It is not for the judiciary to eliminate the private action in situations where Congress has provided it simply because plaintiffs are not taking advantage of it in its more difficult applications." *Sedima,* — U.S. at —, 105 S.Ct. at 3287.

In their eleventh claim the plaintiffs charge that three defendants, Itek, ILC, and Chattayar, violated subsections (a), (b), and (c) of section 1962 by establishing, acquiring an interest in, participating in, or controlling an enterprise, namely G-1, through a pattern of racketeering activity. G-1 is not a named defendant in this claim. In their thirteenth claim, the plaintiffs allege that those same three defendants, Itek, ILC, and Chattayar, also violated subdivision (d) of section 1962 by conspiring to violate subsections (a), (b), and (c) of that statute. Again, G-1 is not a named defendant in this claim. Finally, in their twelfth claim, directed only against defendant G-1, the plaintiffs complain that G-1 violated subsections (a), (b), and (c) by establishing, or acquiring an interest in, participating in, or controlling an enterprise, distinct from G-1, through a pattern of racketeering activity.

## II. DEFENDANTS' ITEK AND ILC'S MOTION FOR SUMMARY JUDGMENT.

Defendants Itek and ILC move for summary judgment on all the plaintiffs' RICO claims. Itek and ILC contend that there are five different grounds upon which summary judgment should be granted in their favor on these claims. For the reasons discussed below, this court concludes that none of these grounds entitles Itek or ILC to summary judgment on the plaintiffs' RICO claims. Therefore, these plaintiffs' motion for summary judgment is denied.

### A. *The predicate acts: mail fraud and wire fraud.*

The first ground upon which Itek and ILC seek summary judgment on the plain-

tiffs' RICO claims is the plaintiffs' alleged failure to establish the elements of the alleged predicate acts of mail fraud and wire fraud. As explained in detail below, however, this court concludes that for purposes of Itek and ILC's motion for summary judgment the plaintiffs have established adequately the elements of these predicate offenses. Thus, defendants Itek and ILC are not entitled to summary judgment on this ground.

■ Among the predicate acts enumerated in 18 U.S.C. section 1961(1) are the federal offenses of mail fraud, 18 U.S.C. § 1341 (1985), and wire fraud, 18 U.S.C. § 1343 (1985). The statutes share identical language in providing that those who act "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... shall be fined or imprisoned...." 18 U.S.C. § 1341; *id.* § 1343; *see United States v. Bohonus*, 628 F.2d 1167, 1171 n. 7 (9th Cir.) (noting that "sections 1341 and 1343 'share identical language' in proscribing the formation of schemes to defraud") (quoting *United States v. Louderman*, 576 F.2d 1383, 1387 n. 3 (9th Cir.1978)), *cert. denied*, 439 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980). Thus, the two statutes are considered of equal scope and are construed with reference to each other. *Bohonus*, 628 F.2d at 1171 n. 7 (noting that the *Louderman* court had "reviewed the scope of § 1341 as guidance in its determination of the scope of § 1343"); *United States v. Louderman*, 576 F.2d 1383, 1387 (9th Cir.1978) ("For guidance in construing the scope and reach of § 1343, we look to ... § 1341.") (footnote omitted), *cert. denied*, 439 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980). State law is irrelevant in determining whether a certain course of conduct violates either section 1341 or section 1343. *Louderman*, 576 F.2d at 1387; *see, e.g.*, *Bohonus*, 628 F.2d at 1171–73.

■ The essential elements of mail fraud under section 1341 and wire fraud under section 1343 are: (1) the formation of a scheme or artifice to defraud; and (2) use of the mails or interstate communications wires in furtherance of the scheme. *Bohonus*, 628 F.2d at 1171; *Louderman*, 576 F.2d 1387.

■ Under the first element of these federal crimes it must be established that the defendant had the specific intent to engage in the scheme or artifice to defraud. *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir.1984); *Bohonus*, 628 F.2d at 1172. The government proves specific intent if it proves that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension. *Green*, 745 F.2d at 1207; *Bohonus*, 628 F.2d at 1172. This intention is shown by examining the scheme itself. *Green*, 745 F.2d at 1207; *Bohonus*, 628 F.2d at 1172. The fraudulent scheme need not be one that includes an affirmative misrepresentation of fact, since it is only necessary for the government to prove that the scheme was calculated to deceive persons of ordinary prudence. *Bohonus*, 628 F.2d at 1173. Thus, the deceitful concealment of material facts may constitute the fraud. *Id.* Finally, these statutes do not require proof that anyone actually has been defrauded or has suffered damages. *United States v. Rasheed*, 663 F.2d 843, 850 (9th Cir.1981), *cert. denied sub nom., Phillips v. United States*, 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982).

■ As noted above, the second element of mail fraud or wire fraud under federal law is the use of the mails or interstate communications wires in furtherance of the scheme to defraud. The government may prove that the defendant used the mails or interstate communications wires for the purpose of executing a scheme to defraud by showing that a defendant acted knowing that the use of the mails or wires would follow in the ordinary course of business, or that, even when not intended, such use was reasonably foreseeable. *United*

*States v. Garner,* 663 F.2d 834, 838 (9th Cir.1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1750, 72 L.Ed.2d 161 (1982); *Bohonus,* 628 F.2d at 1173. The mailings or wire communications do not have to be an essential part of the contemplated scheme, but they must be made for the purpose of executing the scheme. *Garner,* 663 F.2d at 838; *Bohonus,* 628 F.2d at 1173. Direct evidence of the mailing or wire communication is not necessary; circumstantial evidence will suffice. *United States v. Cusino,* 694 F.2d 185, 187 (9th Cir.1982), *cert. denied,* 461 U.S. 932, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983).

In their motion for summary judgment, Itek and ILC contend that the plaintiffs have failed to plead and prove the necessary elements of mail fraud and wire fraud, arguing that the offenses of mail fraud and wire fraud under sections 1341 and 1343, respectively, require proof of the same elements as common law fraud under California law, including proof of: (1) a representation; (2) the falsity of that representation; (3) scienter; (4) actual and justifiable reliance; and (5) damage. *See Vasquez v. Superior Court,* 4 Cal.3d 800, 811, 94 Cal.Rptr. 796, 484 P.2d 964 (1971) (defining the elements of common law fraud under California law). This argument must be rejected. As noted earlier, state law is irrelevant in determining the scope and elements of mail fraud and wire fraud under these federal statutes. Furthermore, as explained above, the Ninth Circuit has held that under sections 1341 and 1343 it need not be established that the defendants made affirmative misrepresentations or that the plaintiff justifiably relied to his detriment on the defendant's representations or omissions. In short, the only two elements of the offenses under these federal statutes are those two elements enumerated above: the formation of a scheme or artifice to defraud and the use of the mails or interstate communications wires in furtherance of the scheme.

The plaintiffs contend that the first element, the formation of a scheme or artifice to defraud, is satisfied because Itek and ILC created G–1 to license and sell the graphics center franchises and led potential franchisees into believing the franchises would turn a profit soon after opening, despite knowing that the franchises would fail financially. The plaintiffs further contend that the defendants established the franchises in order to sell or lease the franchise equipment packages and "lock ... the plaintiffs into leases with ILC." Plaintiffs' Opposition to Itek's Motion for Summary Judgment, at 47 [hereinafter referred to as Plaintiffs' Opposition].

The plaintiffs have produced evidence to support this contention. A brochure that ILC was aware of and that was made available by G–1 to potential franchisees states in part: "An average [franchise] operated by a wife or husband with one part-time employee can gross approximately $6,000 per month in its third or fourth month with a net profit between 34–40%." Plaintiffs' Exhibit No. 359. This brochure could lead a potential franchisee to believe reasonably that a franchise could turn a profit soon after opening up for business. At the same time there is evidence that at least one key ILC employee had concluded otherwise and had expressed these views to others within ILC. James Clark, ILC's manager of credit and collection, stated in his affidavit that he advised ILC against entering into an agreement with G–1 to write leases for the lease of the franchise equipment package by G–1 franchisees, concluding that the franchises would be unprofitable and thus unable to make the lease payments:

It was my opinion that the Graphic One centers were not going to have sufficient customers to provide enough revenue for each center to pay all of its operating expenses, including the center's equipment lease. This opinion was based in part on my review of the material sent by Mr. Chattayar, and in part on my knowledge that, at the same time that Graphics One was being set up, Itek

Graphics Products and its competitors were aggressively marketing typesetters and cameras (the same equipment in the Graphics One package) to quick print ships which Mr. Chattayar said were to be the principal customers of Graphics One centers. In addition, I believed and still believe that it would require a person with special talents in the areas of design and layout in order to provide a product which would be commercially marketable by such Graphics One centers, and it did not appear that Mr. Chattayar planned to market Graphics One centers to such persons.

Affidavit of James Clark, at 3–4. He further stated that ILC's general manager, Delbert G. Patterson, overruled his recommendation and thereafter ILC entered into a leasing arrangement with G–1.

Defendants Itek and ILC have produced evidence that sharply contradicts Clark's story. In his deposition Patterson states that Clark was "enthusiastic" about G–1 as a potential customer of ILC. Deposition of Delbert G. Patterson, at 2 [hereinafter referred to as Patterson Deposition]. Patterson states further that ILC never rejected the idea of providing financing to G–1 and that he never overruled Clark with respect to these matters. *Id.* Finally, Patterson states that Clark had neither the expertise nor the experience to evaluate G–1's "financial solidity" or "the ability of its clients or franchisees to pay their overhead and expenses." *Id.* at 3.

Thus, there is conflicting evidence concerning whether ILC personnel knew or believed the graphics center franchises would fail at the same time that G–1—with ILC's knowledge—was representing to potential franchisees that they could earn a profit soon after opening a franchise. At the very least this conflicting evidence creates a genuine issue of material fact with respect to whether Itek and ILC deceitfully concealed material facts from the plaintiffs. Since the deceitful concealment of material facts may constitute the fraud under the federal mail fraud and wire fraud statutes, a genuine issue of material fact exists with respect to whether Itek and ILC had the specific intent to engage in a scheme to defraud the plaintiffs. Therefore, for purposes of Itek and ILC's summary judgment motion the plaintiffs' have satisfied the first element of the predicate offenses of mail fraud and wire fraud.

The plaintiffs argue that the second element of mail fraud and wire fraud under these federal statutes, the defendants' use of the mails or interstate communications wires in furtherance of their fraudulent scheme, is present because "as to ILC, the mails were used by plaintiffs to forward their lease payments to ILC, and, as to Itek, telephone lines were used by [IGP], which had an '800' toll-free number which all plaintiffs used to purchase Itek supplies for their Itek equipment." Plaintiffs' Opposition, at 47.

Defendants Itek and ILC concede that they did maintain a toll-free "800" number through which franchisees ordered supplies. Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment, at 6 [hereinafter referred to as "Defendants' Reply"]. Likewise, Itek and ILC do not dispute the fact that the franchisees mailed their lease payments to ILC. Itek and ILC, however, contend that for a number of reasons the plaintiffs have failed to establish adequately the requisite elements of mail fraud and wire fraud.

The primary argument put forth by Itek and ILC in support of their position that this element is not satisfied is that all communications between any plaintiff and Itek and ILC occurred only after that plaintiff had become a franchisee. Thus, they argue that any mailings or telephone calls to or from the defendants occurred after the completion of the fraudulent scheme and necessarily were not in furtherance of the scheme.

It is true, as Itek and ILC contend, that the use of the mails and interstate communications wires must be "part of the execu-

tion of the fraud," *Kann v. United States,* 323 U.S. 88, 95, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944), and the statutes are not violated if the mailings or wire communications occur after "the scheme ... has reached fruition." *United States v. Maze,* 414 U.S. 395, 400, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974).

Itek and ILC, however, misconstrue the allegedly fraudulent scheme. The scheme comprised not only fraud in the sale of the franchises themselves, but also fraud in the continuing sale of supplies to the franchisees and fraudulent steps taken after the creation of the franchises to "lock ... plaintiffs into leases with ILC." Plaintiffs' Opposition at, 47. The mailings and wire communications were sufficiently related to these aspects of the fraudulent scheme to constitute a part of the execution of the fraud: the franchisees used the toll-free telephone number to order new Itek-brand products and used the mails to forward their lease payments to ILC.

Itek and ILC argue also that the supply orders placed by the franchisees over the toll-free number were invoiced through and paid by the franchisee to G–1, not Itek. This fact is irrelevant in light of the plaintiffs' contention that G–1 is the RICO enterprise through which the defendants conducted a pattern of racketeering activity. Similarly, it is irrelevant that the toll-free number was abandoned by Itek in 1982 because by that time it already had been used in furtherance of the scheme.

In addition, Itek and ILC argue that certain plaintiffs cannot "allege wire fraud against Itek," Defendants' Reply, at 6, because these plaintiffs never used the toll-free number, while other plaintiffs cannot "maintain [a] mail fraud/RICO action against ILC," *id.* at 7, because these plaintiffs are among the few franchisees who did not lease their franchise equipment package through ILC. These arguments must fail. In order for these plaintiffs to pursue a RICO claim they must merely plead and prove that they have been in-

jured in their business or property by reason of a violation of section 1962. § 1964(c). To establish a violation of section 1962 the plaintiffs must demonstrate eventually, *inter alia,* that the defendants engaged in a pattern of racketeering activity composed of predicate acts injuring or effecting someone, not necessarily plaintiffs. Each RICO plaintiff need not prove that he himself was involved in or injured by one or more of the predicate acts. Obviously, each plaintiff must demonstrate a causal nexus between his own injury and either (i) a predicate act of at least one RICO defendant or (ii) the pattern of racketeering activity by which at least one of the RICO defendants participated in the conduct of the enterprise's affairs.

Furthermore, the defendants apparently argue that their allegedly fraudulent scheme did not involve mail fraud or wire fraud because although the mails and communications wires may have been used in furtherance of the scheme, the mailings and phone calls were not absolutely necessary to the completion of the scheme. This argument is frivolous because the mailings and phone calls need not be an essential part of the scheme. *Garner,* 663 F.2d at 838. They must merely be part of the scheme.

Finally, it should be noted that it is of no consequence that it was the plaintiffs and not Itek or ILC who initiated contact between the parties by sending lease payments through the mails or calling defendants' toll-free number. As discussed above, an individual commits mail fraud or wire fraud if in furtherance of a fraudulent scheme he acts knowing that use of the mails will follow in the ordinary course of business, or that even if not intended, such use was reasonably foreseeable. *Garner,* 663 F.2d at 838. When they established the toll-free number through which to order supplies, Itek and ILC knew franchisees would place calls to that number. Likewise, it was foreseeable that franchisees would make their lease payments by mail.

■ Thus, the plaintiffs have established adequately the necessary elements of the predicate acts of mail fraud and wire fraud under section 1341 and 1343, respectively. Defendant Itek and ILC's argument that they are entitled to summary judgment because the plaintiffs failed to establish the elements of these predicate offenses is unpersuasive.

### B. *RICO and the separate and distinct enterprise requirement.*

■ The second ground upon which defendants Itek and ILC seek summary judgment on the plaintiffs' RICO claims is that there is no RICO enterprise separate and distinct from the RICO defendants. For the reasons discussed below this court concludes that there is a RICO enterprise separate and distinct from defendants Itek and ILC. Furthermore, this court declines to rule on the question of whether there is a RICO enterprise separate and distinct from defendant G–1 because G–1 did not join in this summary judgment motion.

As suggested earlier, to establish a RICO violation under any subsection of section 1962 a plaintiff must prove that the defendant either established, acquired an interest in, participated in, or controlled an "enterprise" through a pattern of racketeering activity. *See* 18 U.S.C. § 1962.

In *Rae v. Union Bank,* 725 F.2d 478 (9th Cir.1984), the Ninth Circuit held that the RICO enterprise must be separate and distinct from the RICO defendant. In *Rae* the plaintiff brought an action against Union Bank and various employees of that bank alleging, *inter alia,* a RICO violation, following the bank's foreclosure on the plaintiff's property. The plaintiff apparently argued that the bank was both the RICO defendant and the RICO enterprise. The Ninth Circuit rejected the plaintiff's RICO claim and stated: "If Union Bank is the enterprise it cannot also be the RICO defendant." *Id.* at 481; *accord United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982) ("We con-

clude that 'enterprise' was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit, and, failing that, to punish.") *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Lopez v. Dean Witter Reynolds, Inc.,* 591 F.Supp. 581, 585 (N.D.Cal.1984) ("[I]f an entity is the 'enterprise,' it cannot also be the RICO defendant.") (citing *Rae* ); *Wilcox Development Co. v. First Interstate Bank of Oregon,* 590 F.Supp. 445, 451 (D.Ore.1984) ("The statute is clear that the enterprise cannot be the RICO defendant; RICO prohibits the *person* from acquiring or conducting the affairs of an enterprise through a pattern of racketeering activity.") (emphasis in original) (citing *Rae* ).

Itek and ILC concede, as they must, that G–1 is an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4) (1982), because it is a corporation and thus falls squarely within RICO's definition of enterprise. *Id.; see* Itek and ILC's Statement of Uncontroverted Facts and Conclusions of Law ¶ 11. Furthermore, defendants Itek and ILC do not dispute the fact that G–1, as an independent corporation, is a separate and distinct entity from themselves so as to satisfy the requirement that the RICO enterprise be different than the RICO defendants. Thus, the plaintiffs' eleventh and thirteenth claims, which, as noted earlier, allege that defendants Itek, ILC, and Chattayar violated RICO by establishing, acquiring an interest in, participating in, or controlling an enterprise, namely G–1, through a pattern of racketeering activity, satisfy RICO's separate enterprise requirement. Therefore, defendants Itek and ILC are not entitled to summary judgment on these particular claims on this ground.

Itek and ILC, however, argue that they are entitled to summary judgment on the plaintiffs' twelfth claim because that claim fails to satisfy RICO's separate and distinct enterprise requirement. This claim, as noted above, alleges that defendant G–1

violated RICO by establishing, acquiring an interest in, participating in, or controlling enterprises, *distinct* from G–1, through a pattern of racketeering activity. The enterprises that G–1 allegedly infiltrated are: "The system of G–1 franchises; and/or ... The individual franchised businesses owned by the plaintiffs." Second Amended Complaint ¶ 81.

It is difficult to understand how and why Itek and ILC are moving for summary judgment on behalf of defendant G–1 on the plaintiffs' twelfth claim when G–1 is not even a party to this motion. This court declines to grant Itek and ILC's motion for summary judgment on the plaintiffs' twelfth claim for any reason because that claim is directed against only defendant G–1. Therefore, defendant Itek and ILC's motion for summary judgment on this claim is denied.

### C. *Itek and ILC's participation in the RICO enterprise, G–1.*

The third ground upon which defendants Itek and ILC seek summary judgment on the plaintiffs' RICO claims is the alleged lack of evidence that they actively managed the affairs of the RICO enterprise, G–1. For the reasons discussed below, this court holds that the plaintiffs need not plead and prove that Itek and ILC actively managed G–1's affairs. Instead, they need only establish that Itek and ILC's pattern of racketeering activity was related to G–1's affairs. This court holds further that the plaintiffs have produced sufficient evidence to establish this relationship.

Defendant Itek and ILC's contention that they are entitled to summary judgment on the plaintiffs' RICO claims because they did not actively manage G–1's affairs is relevant only to the extent that those claims are brought under section 1962(c). This is so because subsection (c) is the only subsection of section 1962 that requires that the defendant conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

Neither the United States Supreme Court nor the Ninth Circuit has addressed the question of the extent to which the defendant must participate in the enterprise's affairs through a pattern of racketeering activity. Federal courts in other jurisdictions, however, have confronted this issue and have reached varying conclusions.

Some federal courts have held that the defendant must participate in the operation or management of the enterprise. *E.g., Bennett v. Berg,* 710 F.2d 1361, 1365 (8th Cir.1983) ("A defendant's participation must be in the conduct of the affairs of a RICO enterprise, which ordinarily will require some participation in the operation or management of the enterprise itself.") *cert. denied sub nom., Prudential Insurance Co. of America v. Bennett,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *United States v. Mandel,* 591 F.2d 1347, 1375 (4th Cir.1979) (affirming the district court's holding that "the 'conduct or participate' language in § 1962(c) required some involvement in the operation or management of the business, and that on the facts of [that] case the transfer of a partnership interest ... did not meet this requirement"), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); *United States v. Kaye,* 586 F.Supp. 1395, 1400 (N.D.Ill.1984) (following *Bennett* and holding that the "government must prove [the defendant] took part, directly or indirectly, in the direction or management of the" RICO enterprise); *cf. United States v. Webster,* 639 F.2d 174, 184–85 (4th Cir.) (holding that the pattern of racketeering activity must benefit or advance the affairs of the enterprise), *cert. denied sub nom., United States v. Christian,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981).

Other federal courts, however, merely require that the predicate acts be related to or have an effect upon the enterprise's affairs. *E.g., United States v. Carter,* 721 F.2d 1514, 1525–28 (11th Cir.1984) (holding

that "proof of an effect upon the common, everyday affairs of the enterprise" is "clearly sufficient to support the required nexus between the enterprise and the racketeering activity"), *cert. denied sub nom., Morris v. United States,* —— U.S. ——, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984); *United States v. Cauble,* 706 F.2d 1322, 1333 & n. 24 (5th Cir.1983) (holding that a defendant conducts or participates in the conduct of a RICO enterprise's affairs merely if "the predicate acts [have] some effect on the lawful enterprise[;] [t]he prosecution need prove only that the racketeering acts affected the enterprise in some fashion"), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); *United States v. Welch,* 656 F.2d 1039, 1060–62 (5th Cir. 1981) (rejecting the requirement that the racketeering activities benefit the enterprise and holding that § 1962(c) requires only "a sufficient nexus between the racketeering activities and the affairs of the enterprise"), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982); *United States v. Scotto,* 641 F.2d 47, 54 (2d Cir. 1980) (holding that a defendant participates in a RICO enterprise through a pattern of racketeering activity merely if "the predicate offenses are related to the activities of that enterprise"), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981).

Defendants Itek and ILC argue that this court should apply the stringent standard that requires a RICO plaintiff to plead and prove that the defendant participated in the operation and management of the RICO enterprise through a pattern of racketeering activity. Itek and ILC contend that the plaintiffs have failed to satisfy this standard for several reasons. First, the defendants argue that the plaintiffs have not established that there was an exclusive dealing arrangement between Itek, ILC, and G–1. The defendants contend that in actuality graphics center franchisees were not required to use ILC financing and were free to use supplies manufactured by companies other than Itek. Second, Itek and ILC argue that the plaintiffs failed to dem-

onstrate the elements of an agency relationship between Itek and ILC. Third, these defendants argue that the plaintiffs failed to demonstrate that Itek and ILC instructed G–1 to become a licensed franchisor. Fourth, defendants Itek and ILC contend that the plaintiffs failed to demonstrate that Itek and ILC orchestrated certain important personnel changes at G–1. Fifth, and finally, Itek and ILC argue that the plaintiffs have not adequately proved that Itek and ILC played any role in the creation, management, or operation of G–1.

The defendants offer evidence in the form of depositions and affidavits in support of these arguments. These arguments and the accompanying evidence would be relevant only if this court were to adopt the stringent standard requires a RICO plaintiff to show that the defendant participated in the operation and management of the RICO enterprise through a pattern of racketeering activity.

This court rejects the stringent standard. That requirement goes beyond the "self-consciously expansive language and overall approach" of RICO, *Sedima,* —— U.S. at ——, 105 S.Ct. at 3286, particularly section 1962(c), which merely requires that a person employed by or associated with the enterprise conduct or participate, either directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity. The statute does not require that the defendant participate in the operation or management of the enterprise. Furthermore, such a requirement would frustrate RICO's broad remedial purposes. *See id.* It "would frustrate the major thrust of RICO, repeated time and time again in its legislative history, as a weapon fashioned by Congress to combat the infiltration of legitimate businesses by organized crime." *Carter,* 721 F.2d at 1527 (citing *United States v. Turkette,* 452 U.S. 576, 591, 101 S.Ct. 2524, 2533, 69 L.Ed.2d 246 (1981)).

■ This court holds that a RICO plaintiff pursuing a private cause of action un-

der section 1962(c) need only prove that the predicate acts are related to the affairs of the RICO enterprise. In other words, there must be some nexus between the pattern of racketeering activity and the enterprise's affairs. This liberal standard follows from section 1962(c)'s language requiring that the defendant merely conduct or participate directly or *indirectly* in the affairs of the enterprise through a pattern of racketeering activity. Unlike the stringent standard, such an interpretation of section 1962(c) better supports the remedial purposes of RICO discussed above.

The pattern of racketeering activity in the case at hand, the alleged acts of mail fraud and wire fraud committed by defendants Itek and ILC, are related sufficiently to the affairs of the RICO enterprise, G–1, to satisfy section 1962(c). The acts of wire fraud stemming from use of the toll-free "800" number, through which franchisees could order Itek-brand supplies, obviously were related to the activities of G–1. The defendants note in their Reply that "those supply orders were invoiced through and paid by the franchisee to [G–1] ..." Defendants' Reply, at 6. The predicate acts resulting from the use of this toll-free number alone could support a RICO claim because it is clear that the phone number was used to commit at least two related acts of wire fraud within a ten-year period, all of which occurred after RICO's effective date.

The alleged predicate acts of mail fraud based on the use of the mails by the franchisees to send their lease payments to ILC also are sufficiently related to the affairs of G–1 to satisfy section 1962(c). The testimony of Delbert Patterson, ILC's general manager, *see* Patterson Deposition, at 351, 388, 417, and a letter from G–1's president, Darryl Chattayar, to Patterson, Plaintiffs' Exhibit No. 359, evidence the close relationship between ILC and G–1. More particularly, these statements and documents reveal that G–1 could not have established the franchises without a financing arrangement of the type it maintained with ILC

that permitted franchisees to lease their equipment. In short, a financing arrangement of this type was essential to G–1 and its franchisees. Obviously the use of the mails by the franchisees to send their lease payments to ILC was a necessary part of this arrangement. This establishes a sufficient nexus between the predicate acts of mail fraud stemming from these uses of the mails and the RICO enterprise, G–1.

█ Thus, defendants Itek and ILC's argument that they are entitled to summary judgment on the plaintiffs' RICO claims because of the lack of a nexus between the pattern of racketeering activity and the affairs of the RICO enterprise is unpersuasive. For purposes of this motion, that nexus is sufficient.

### D. *RICO and the "prior criminal conviction" requirement.*

The fourth ground upon which defendants Itek and ILC seek summary judgment on the plaintiffs' RICO claims is the fact that the plaintiffs have failed to establish that the defendants have been convicted of violating either RICO itself or any of RICO's predicate offenses. This court suggested strongly at a November 9, 1984 status conference that it would not adopt this "prior criminal conviction" requirement. More importantly, the Supreme Court in *Sedima* has flatly rejected any such requirement:

> In sum, we can find no support in [RICO's] history, its language, or considerations of policy for a requirement that a private treble damages action under § 1964(c) can proceed only against a defendant who has already been criminally convicted. To the contrary, every indication is that no such requirement exists. Accordingly, the fact that [the corporate defendant] and the individual defendants have not been convicted under RICO or the federal mail or wire fraud statutes does not bar [the plaintiff's] action.

*Sedima,* —— U.S. at ——, 105 S.Ct. at 3284.

As it is clear that there is no prior criminal conviction requirement under RICO, de-

fendants Itek and ILC are not entitled to summary judgment on the plaintiffs' RICO claims on this ground.

### E. RICO and the "racketeering-type injury" requirement.

The fifth and final ground upon which defendants Itek and ILC seek summary judgment on the plaintiffs' RICO claims is the plaintiffs' failure to allege that they suffered "racketeering-type" injuries distinct from and in addition to their injuries suffered as a result of the defendants' commission of two or more of RICO's predicate acts. The Supreme Court in *Sedima*, however, also declined to adopt any "racketeering injury" requirement. The *Sedima* Court stated:

> [W]e perceive no distinct "racketeering injury" requirement. Given that "racketeering activity" consists of no more and no less than commission of a predicate act, § 1961(1), we are initially doubtful about a requirement of a "racketeering injury" separate from the harm from the predicate acts. A reading of the statute belies any such requirement. Section 1964(c) authorizes a private suit by "[a]ny person injured in his person or property by reason of violation of § 1962." Section 1962 in turn makes it unlawful for "any person"—not just mobsters—to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity. §§ 1962(a)–(c). If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c). There is no room in the statutory language for an additional, amorphous "racketeering injury" requirement.

*Sedima*, —— U.S. at ——, 105 S.Ct. at 3285.

The *Sedima* Court went on to note that to state a claim under section 1962(c) a plaintiff need only allege that the defendant participated in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Id.* The Court further noted that conducting an enterprise that affects interstate commerce obviously is not in itself a violation of § 1962, nor is the mere commission of the predicate offenses. *Id.* at ——, 105 S.Ct. at 3285. "In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Id.* The *Sedima* Court, however, concluded that "the statute requires no more than this." *Id.*

> Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise. Those acts are, when committed in the circumstances delineated in § 1962(c), "an activity which RICO was designed to deter."

*Id.*

Since it is clear that RICO does not require a racketeering injury, defendants Itek and ILC are not entitled to summary judgment on the plaintiffs' RICO claims on this ground.

### F. Summary.

This court has reviewed each of the five grounds upon which defendants Itek and ILC contend they are entitled to summary judgment on the plaintiffs' RICO claims. As discussed above in detail, none of these grounds entitles the defendants to summary judgment on the plaintiffs' RICO claims. Therefore, defendants Itek and ILC's motion for summary judgment is denied. In light of this result, this court also declines to dismiss the plaintiffs' pendent state claims under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## III. THE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT.

In their cross-motion the plaintiffs seek partial summary judgment with respect to particular elements of their RICO claim under section 1962(c). For the reasons discussed below this court grants the plaintiffs' motion for partial summary judgment on these specific elements of this particular RICO claim.

### A. *Section 1962(c) generally.*

As discussed above, in *Sedima* the Supreme Court stated that "[a] violation of § 1962(c) ... requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima,* ⸺ U.S. at ⸺, 105 S.Ct. at 3285. At least two federal courts of appeals have adopted a definition of section 1962(c)'s elements that, while consistent with the *Sedima* Court's definition, is more elaborate and thus more helpful. Under this definition—which is relied upon by the parties in this action—the RICO plaintiff must prove: (1) the existence of an enterprise which affects interstate or foreign commerce; (2) that the defendant associated with the enterprise; (3) that the defendant participated in the conduct of the enterprise's affairs; and (4) that the participation was through a pattern of racketeering activity. *United States v. Hartley,* 678 F.2d 961, 987 (11th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); *United States v. Phillips,* 664 F.2d 971, 1011 (5th Cir.1981), cert. denied sub nom., *Meinster v. United States,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *see Haroco v. American National Bank and Trust Co. of Chicago,* 747 F.2d 384, 387 (7th Cir.1984) (adopting a definition of the elements of section 1962(c) that is very similar to the definition formulated by the *Hartley* and *Phillips* courts), *aff'd,* ⸺ U.S. ⸺, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Alcorn County, Miss. v. U.S. Interstate Supplies, Inc.,* 731 F.2d 1160, 1168 (5th Cir.1984) (same); *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983) (same), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

In their motion the plaintiffs seek partial summary judgment on the first three elements of a section 1962(c) claim as defined by the *Hartley* and *Phillips* courts. They also seek to establish that a genuine issue of material fact exists with respect to the fourth element.

### B. *G–1 as a RICO enterprise and its effect upon interstate commerce.*

The first element of a section 1962(c) claim is the existence of an enterprise which affects interstate or foreign commerce. In order to satisfy this element a RICO plaintiff must establish: (1) that the entity in question is an "enterprise" within the meaning of RICO; and (2) that the enterprise affects interstate or foreign commerce. *See* § 1962(c). The court has already concluded G–1 is an "enterprise" within the meaning of RICO, leaving the question of whether G–1 affected interstate or foreign commerce. As the Ninth Circuit has noted, the enterprise's "effect on commerce is an essential element of a RICO violation, but the required nexus need not be great. A minimum effect on interstate commerce satisfies this jurisdiction element." *United States v. Bagnariol,* 665 F.2d 877, 892 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982); *see United States v. Rone,* 598 F.2d 564, 573 (9th Cir.1979) ("The government must show a nexus of the enterprise to interstate or foreign commerce, *albeit minimal,* to satisfy the requirement.") (emphasis added), *cert. denied sub nom.,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *accord United States v. Barton,* 647 F.2d 224, 233 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981).

Although neither the Supreme Court nor the Ninth Circuit has addressed the issue, federal courts in other jurisdictions have held that the mere receipt or use by a

RICO enterprise of goods shipped interstate is enough to satisfy this requirement. *United States v. Allen*, 656 F.2d 964, 964 (4th Cir.1981) (*per curiam*); *Meineke Discount Muffler Shops, Inc. v. Noto*, 548 F.Supp. 352, 354 (E.D.N.Y.1982).

In the case at hand neither Itek nor ILC addresses the question of G–1's effect on interstate or foreign commerce. Nor do they present evidence on this issue. The plaintiffs, on the other hand, present evidence that the Itek equipment ordered by G–1 for individual franchisees was shipped by ILC from New York to California. Deposition of David Lawrence Sophia, at 82. Thus, there is uncontroverted evidence that the RICO enterprise, G–1, received the equipment in question through interstate commerce. This nexus between interstate commerce and G–1 is sufficient to satisfy section 1962(c). Therefore, the plaintiffs' motion for partial summary judgment as to this element of their section 1962(c) claim is granted.

### C. *Itek and ILC's association with the RICO enterprise.*

The second element of a section 1962(c) claim that must be established by the RICO plaintiff is that the defendants were "employed by or associated with" the RICO enterprise. § 1962(c). It should be emphasized that this requirement is separate from section 1962(c)'s requirement that the RICO defendants conduct or participate, directly or indirectly, in the enterprise's affairs through a pattern of racketeering activity.

The Supreme Court has never addressed directly the meaning of this element of a section 1962(c) claim. The Ninth Circuit decision dealing most directly with this element is *United States v. Tille*, 729 F.2d 615 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984). In *Tille* the Ninth Circuit rejected the argument that in order to bring a section 1962(c) claim a RICO plaintiff must prove that the RICO defendant was actually employed by or associated with the RICO enterprise *independent* of any pattern of racketeering activity. *Id.* at 620. The *Tille* court went on to state: "Proof of defendant's association with the illegal activities of the enterprise is all that is required. Associated outsiders who participate in a racketeering enterprise's affairs fall within RICO's strictures." *Id.* Thus, at the very least *Tille* makes clear that "associated outsiders" may satisfy this element of a section 1962(c) claim. Virtually every other federal court that has considered the question has concluded that this "employed by or associated with" element of a section 1962(c) claim should be construed broadly. Likewise, every federal court that has considered the issue has concluded that outsiders associated with the RICO enterprise may satisfy this element. In the leading case, *Schacht v. Brown*, 711 F.2d 1343 (7th Cir.1983), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983), the Seventh Circuit rejected the argument that the RICO defendant must be an insider or manager of the RICO enterprise in order to incur liability. The *Schacht* court went on to conclude that:

> The nature of racketeering connections to an otherwise legitimate business suggests that elements outside a company may assist in obtaining the company's illegal goals. Thus, the substantive proscriptions of the RICO statute apply to insiders *and outsiders*—those merely associated with an enterprise—who participate directly *and indirectly* in the enterprise's affairs through a pattern of racketeering activity. Thus, the RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise.

*Id.* at 1360 (emphasis in original); *United States v. Starnes*, 644 F.2d 673, 679 (7th Cir.) (same), *cert. denied*, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981); *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir.) (same), *cert. denied sub nom. Delph v. United States*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *accord United*

*States v. Kaye*, 586 F.Supp. 1395, 1400 (N.D.Ill.1984) ("RICO's concept of 'associated with any enterprise' is very broad.") (citing *Schacht* ); *United States v. Lavin*, 504 F.Supp. 1356, 1359 (N.D.Ill.1981) (concluding that a narrow reading of "associated with ... conflicts with not only the explicit Congressional mandate to broadly construe [RICO] but also with the plain meaning of the term 'associate' ").

This court agrees that the "employed by or associated with" requirement of section 1962(c) should be broadly interpreted and should include outsiders associated with the enterprise as well as enterprise insiders. Such an interpretation comports with both the common definition of "associate," *see Lavin*, 504 F.Supp. at 1359 n. 3 (quoting Webster's International Dictionary 132 (3d ed. 1961, unabridged)), and the *Sedima* Court's admonition, detailed above, that RICO should be construed broadly to effectuate Congress' intent. *Sedima*, —— U.S. at ——, 105 S.Ct. at 3285.

■ In support of their motion for partial summary judgment on this particular element of their section 1962(c) claim the plaintiffs argue that defendants Itek and ILC were sufficiently associated with the RICO enterprise, G–1, because they: organized it, funded it, defined the franchise equipment package that was offered by G–1 to the franchisees, instructed G–1 to create franchises in order to increase its revenues, and sold $20,000 worth of equipment to every plaintiff in this action through G–1. The record before this court may not support the plaintiffs' contention that Itek and ILC maintained this high degree of association or interrelationship between Itek and ILC on the one hand and G–1 on the other. However, the record before this court clearly evidences ongoing business relationships between Itek, ILC, and G–1. Such ongoing business relationships are sufficient to satisfy this "associated with" element of section 1962(c).

Itek and ILC present no evidence negating the existence of these relationships. The only evidence proffered by these defendants in opposition to the plaintiffs' motion for partial summary judgment on this element is evidence that Itek and ILC did not share personnel with and did not create, manage, or operate G–1. *See* Declarations of Jim R. Williams, Jerre M. Blodgett, and Delbert G. Patterson. This evidence, however, does not create a genuine issue of material fact with respect to this element of a section 1962(c) claim because such level of involvement is not required.

Furthermore, Itek and ILC's own Statement of Uncontroverted Facts and Conclusions of Law evidences the existence of ongoing business relationships between Itek, ILC, and G–1 sufficient to satisfy the "associated with" element of section 1962(c). In that document Itek and ILC state, *inter alia:* (1) that Itek, through its IGP division, manufactured typesetting and camera equipment that G–1 used for the first three years of its existence; and (2) that ILC offered optional lease financing to G–1 franchisees and that most of the plaintiffs in this action elected to lease all their graphics equipment through ILC. Itek and ILC's Statement of Uncontroverted Facts and Conclusions of Law ¶¶ 6–7, at 2.

Thus, this court holds that the record contains more than enough evidence of ongoing business relationships between Itek, ILC, and G–1 to satisfy the "associated with" element of section 1962(c). There is no evidence negating these relationships. Therefore, the plaintiffs' motion for partial summary judgment on this element is granted.

*D. Itek and ILC's participation in the conduct of the RICO enterprise's affairs.*

The third element of a section 1962(c) claim is the defendants' conduct of or participation in the conduct of the RICO enterprise's affairs through a pattern of racketeering activity. This issue was discussed thoroughly above with respect to Itek and ILC's motion for summary judgment. This

court rejected Itek and ILC's argument that they are entitled to summary judgment on the plaintiffs' RICO claims because they did not actively manage the affairs of the RICO enterprise, G–1. Instead, this court held that a RICO plaintiff pursuing a claim under section 1962(c) need only establish the existence of some nexus between the pattern of racketeering activity and the enterprise's affairs.

■ The record reveals and the plaintiffs have proffered sufficient evidence to establish the existence of a nexus between Itek and ILC's pattern of racketeering activity and G–1's affairs. This evidence is discussed above with respect to Itek and ILC's motion for summary judgment. That discussion makes clear that these defendants did not bring forth any evidence negating the existence of this nexus. As noted earlier, the only evidence proffered by Itek and ILC in support of their motion for summary judgment on this ground related to their lack of involvement in actively managing G–1's affairs. As this court concluded above, however, this evidence is irrelevant because Itek and ILC need not have actively managed G–1's affairs but must merely have participated in those affairs to an extent sufficient to create a nexus between the pattern of racketeering activity and the enterprise's affairs.

Since there is uncontroverted evidence that Itek and ILC participated in G–1's affairs through a pattern of racketeering activity to an extent sufficient to satisfy section 1962(c)'s nexus requirement, the plaintiffs' motion for partial summary judgment on this element of their section 1962(c) claim is granted.

E. *The plaintiffs' "offer of proof" that there exists a genuine issue of material fact with respect to whether Itek and ILC's participation in G–1's affairs was through a pattern of racketeering activity.*

The fourth element of a section 1962(c) claim is that the RICO defendant's partic-

ipation in the affairs of the RICO enterprise was through a pattern of racketeering activity. The plaintiffs do not seek summary judgment on this element. Rather, they make what they term is an "offer of proof" in hopes of establishing (1) the elements of mail fraud and wire fraud under 18 U.S.C. sections 1341 and 1343, respectively; and (2) the existence of a genuine issue of material fact with respect to whether Itek and ILC had the specific intent to engage in a scheme or artifice to defraud within the meaning of these federal statutes.

In ruling on Itek and ILC's motion for summary judgment, above, this court defined the essential elements of mail fraud under section 1341 and wire fraud under section 1343 to be: (1) the formation of a scheme or artifice to defraud; and (2) use of the mails or interstate communications wires in furtherance of the scheme. This is the definition of the elements of these federal crimes that the plaintiffs encourage this court to adopt. This court further noted that under the first element of these federal crimes it must be established that the defendant had the specific intent to engage in the scheme or artifice to defraud. This court concluded that there exists a genuine issue of material fact with respect to whether Itek and ILC had this specific intent to defraud. Everything that the plaintiffs seek to establish in their "offer of proof" has already been decided in their favor by this court in ruling on Itek and ILC's motion for summary judgment. Therefore, it is unnecessary for this court to further rule on these issues.

F. *Summary.*

This court has thoroughly reviewed the arguments and evidence offered by the parties in support of and in opposition to the plaintiffs' motion for partial summary judgment on the first three elements of their section 1962(c) claim. This court holds that the plaintiffs' motion for partial summary judgment is granted in its entire-

ty. However, this court finds it unnecessary and therefore declines to rule on the plaintiffs' "offer of proof."

## ORDER ON RECONSIDERATION

On reconsideration of the amended memorandum and order filed December 2, 1985, the court observes:

1. The previous memorandum cannot be read to say that plaintiffs have established commission of the predicate acts of mail fraud and wire fraud as a matter of law. While plaintiffs can clearly show the mechanics of those acts, *i.e.* use of wires and mails in furtherance of their activities, there are obviously genuine issues of fact to be determined with respect to whether such acts were committed, particularly the specific intent to defraud. All the court did on these issues was deny defendants' summary judgment motions.

2. Obviously, each plaintiff must show his own damage and the requisite causation. Attached are revised page 1425 of the former order and new page 1425, adding to the first full paragraph of page 1425 the following: *

> "Obviously, each plaintiff must demonstrate a causal nexus between his own injury and either (i) a predicate act of at least one RICO defendant or (ii) the pattern of racketeering activity by which at least one of the RICO defendants participated in the conduct of the enterprise's affairs."

3. This court certainly did not find a pattern of racketeering as a matter of law. If plaintiffs prove what they contend they will establish a pattern.

4. Section 1962(c)'s "conduct or participate" language does not require a showing that defendants *actively* participated in operation or management of the enterprise.

5. On the facts of this case the ongoing business relationships between the alleged RICO defendants and the enterprise are

\* *Ed. note:* this material has been added to the

sufficient to satisfy the "employed by or associated with" element of § 1962.

The motion for reconsideration is denied in all other respects. The motion to certify for interlocutory appeal is denied.